2    133
56   534

AARON HAZEN v. CHARITY DURLING, Administrator of JOHN DURLING, deceased, and others.

The condition of an administration bond, under the statute of New-Jersey, is not restricted merely to the rendering of an account, but is designed to secure a faithful administration of the estate.

It is a part of the condition of such a bond, that the administrator shall faithfully apply the assets to the payment of the debts ; and the non-payment of a judgment obtained against the administrators may be assigned as a breach of the condition.

After the return of *nulla bona* upon an execution against the administrators, the administration bond is forfeited, and the surety has a right to satisfy the execution with or without suit upon the bond.

Such payment is not voluntary, and the party making it may recover it back from the party for whose benefit it was made.

A surety in an administration bond, having satisfied an execution against the estate of the intestate, becomes a creditor of the administrators in their own right, having paid money for their joint account. His remedies against them should be exhausted, before this court can interfere in his behalf to reach the assets of the intestate.

[Hazen v. Durling et al.]

Can relief be had in this court against the representatives of one of two joint
debtors, without making the other joint debtor a party, and showing by a
return of *nulla bona* that the money could not be recovered against her
*at law?—Qu.*

It seems, that where the bill charges that one of two joint debtors is insolvent,
the court, especially in favor of a surety, will sustain the bill against the
representatives of the other.

Upon a decree for an account, upon a bill filed by a creditor against an admin-
istrator, the account cannot be taken for the benefit of the complainant
alone, but must be for the benefit of all such creditors as choose to come in
before the master.

A decree of this court is a judgment from its date in favor of all the creditors,
and they are entitled to be paid rateably unless they have some legal pri-
ority.

THE pleadings in this case present the following state of facts.
John Durling, of the county of Sussex, in the year 1811, died
intestate; and his widow, Charity Durling, and John Tillman,
took out letters of administration upon his estate, and gave a
bond for the faithful discharge of their duties as such adminis-
trators under the act, with the complainant and Amos Shiner as
sureties. Jesse Baldwin, having a claim against the intestate,
prosecuted a suit in the supreme court of this state against the
administrators, and upon the several pleas of the general issue
and the statute of limitations, obtained a judgment in the term
of November, 1825, for two hundred dollars damages. On this
judgment execution was issued to levy the amount, of the goods
and chattels of the intestate, in the usual form, to the sheriff of
the county of Warren; who returned the same *nulla bona.* Af-
ter this return, the plaintiff in the said judgment obtained an
order from the ordinary for prosecuting the administration bond,
and actually commenced and was proceeding in said suit, when
the defendant, Hazen, paid the amount due on Jesse Baldwin's
judgment, with the costs of the suit on the administration bond.
Shiner, the co-surety with the complainant, and John Tillman,
one of the administrators, are both dead. The complainant, hav-
ing thus paid money on the administration bond, as surety for
these administrators, filed this bill against Charity Durling, in

[Hazen v. Durling et al.]

her character of administrator of her husband, John Durling, and also against the administrators of John Tillman, the deceased administrator, praying to recover the amount so paid by him, first, out of the estate of John Durling, in the hands of Charity Durling, his surviving administrator, if there be any such estate, and if not, then from the estate of John Tillman, in the hands of his administrators.

Charity Durling did not answer, but allowed a decree pro confesso, to be taken against her. The administrators of Tillman answered, and the cause was submitted upon the pleadings and proofs, without argument.

*J. W. Miller,* for complainant.

*I. H. Williamson,* for defendants.

THE CHANCELLOR. The first and most obvious question to be settled in this cause is, whether the administration bond was forfeited. If not, then the complainant paid the money voluntarily, and the foundation upon which he has based his suit is gone. In the case of the *Archbishop of Canterbury* v. *Wills,* 1 *Salk.* 316, it was held by Holt, chief justice, that the condition of this bond was answered by rendering an account, and was not intended to be a security for the payment of the debts: that a creditor had no right to prosecute this bond, and assign for breach the non-payment of a debt to him. That this should ever have been held as a compliance with the terms of the bond, is indeed strange, when the condition requires the administrator not only to account, but "well and truly to administer" the estate according to law. Chief justice Spencer, in the case of *The People* v. *Dunlap,* 13 *Johns. Rep.* 440, has placed this subject, in my opinion, on the true ground. In that case there was a judgment and execution by a creditor of the intestate against the administrators, and a return, as in this case, of *nulla bona,* and the very point, was raised on the authority of the case in *Salkeld,* that it was no part of the condition of the bond that

[Hazen v. Durling et al.]

the administrator should pay the debts; but the judge declared it was, and held it to be a good assignment of a breach in the bond. The chief justice also refers, in that opinion, to other authorities, settling the case I think clearly, and upon the only rational and sound principles. After the return of *nulla bona* on the execution against the administrators, the bond was forfeited, and the surety had a right to pay it with or without suit. The administrators of Tillman were requested to pay it by the complainant, but declined having any thing to do with it; the surviving administrator did not do it, and the complainant went forward and paid it. The payment cannot be considered as voluntary, but compulsory, and made after a forfeiture of the bond.

I am not ignorant that the supreme court of this state have considered this subject, in the case of *The Ordinary* v. *Robinson and others*, 1 *Halsted*, 195, and in the case of *The Ordinary* v. *Snook and others*, 5 *Halsted*, 65. Those cases were designed to settle the course of practice in a suit on an administration bond. They do not deny the doctrine that a creditor may sue the bond, but decide that he cannot assign as a breach the non-payment of his debt. The breach assigned must be, that the administrator has not made a true and perfect inventory, or has not administered the estate according to law. Under this last breach, the not paying the debts of the intestate are embraced. These cases relate to the forms of proceeding in the common law courts on the administration bonds, and are not designed to vary in any way the general principles of law relating to the liabilities of parties under them. I see nothing in these cases that looks like a denial that a creditor may, in proper form, obtain his remedy on the bond, and that it is a security to him as well as to the next of kin.

In the case now before me, the suit on the bond is evidently brought under the decision in 1 *Halsted*. The breaches assigned are, for not filing an inventory, for not administering the estate according to law, and for not making a just and true account of the administration. The bill charges that sufficient assets came to the hands of the administrators of Durling to pay all his debts. The answer admits that he left a considerable

personal estate, but professes to be ignorant of the amount. The proofs in the cause show a balance unadministered in the hands of the administrators of two thousand eight hundred and sixty-four dollars and forty-two cents, on the settlement of their accounts in the orphan's court. In adjudging, therefore, this bond to have been forfeited, there is no conflict with the decisions before referred to.

The complainant is a creditor of Charity Durling and John Tillman in their own right, as having paid money for their joint account. His remedies against them should be exhausted, before this court can interfere in his behalf, to reach the assets of John Durling, the first intestate. If it had been shown that the complainant had sought in vain, by suit, to get his money from those, from whom he had a right and was bound to seek it in the first instance, I will not say a bill might not have been so framed as to follow the assets of the first intestate : but until such remedies are sought, I cannot see how relief can be asked in this case. So far, then, as this bill prays an account from the surviving administrator of John Durling, of the assets of that estate, the bill must be dismissed, but without costs, as she has not appeared or incurred any expenses in the case.

I have had much doubt whether the remaining branch of the bill, praying an account against the representatives of Tillman, ought to be sustained, without making Charity Durling a party in her own right, and showing that the money could not be recovered against her at law, by a return of *nulla bona*. I do not find any case expressly so declaring, but I do find such to be the practice. The right of coming into equity upon the plain case of a creditor against executors, though it has sometimes been done, has been questioned unless there existed some special circumstances calling for the interference of the court. The right has been sanctioned upon the plea of discovering assets, and lord Hardwicke, in 2 *Atk.* 363, said that he would not, where the parties were thus before him, turn them round to a court of law, for the sake of the expense. Chancellor Kent has sanctioned the general doctrine in a very able opinion, in the case of *Thompson* v.

[Hazen v. Durling et al.]

*Brown*, 4 *John. Ch. Rep*. 625. That was the case of a creditor of a firm, (a simple contract creditor,) and the bill was filed against the surviving partner, against whom they had exhausted their remedies at law by a return of *nulla bona*, and against the representatives of the deceased partner. The bill was sustained, and there was a decree against the representatives of the deceased partner. But there were in the case some peculiar circumstances which called for the aid of the court.

It would have been more proper to have made Charity Durling a party in her own right, after exhausting the remedy at law; but it is charged in the bill, and sustained by the evidence, that she was insolvent; and under such circumstances, and especially in favor of a surety, I have come to the conclusion that the bill should be sustained so far as it prays an account against the administrators of Tillman.

This account, upon well-settled authority, cannot be taken for the benefit of the complainant alone, but must be for the benefit of all such creditors as may choose to come in before the master. A decree of this court is a judgment from its date in favor of all the creditors, and they are entitled to be paid rateably unless they have some legal priority. For the rule on this subject, I refer to the case in 4 *Johns. Ch. Rep*. 625.

I shall order a reference to a master, to ascertain the amount due the complainant for monies paid by him on the aforesaid administration bond, and the amount due to all other the creditors of J. Tillman, deceased, who shall come in and contribute to the expenses of this suit; and that the master report the nature of such claims, whether by judgment, mortgage or otherwise; and that the master give reasonable notice, in his discretion, for all such creditors to come in by a certain day. Also, that he take an account of the personal estate of the intestate which hath come to the hands of the said administrators, what is the situation of said administration, and whether they have fully administered or not. All other and further directions are reserved.

Order accordingly.